Next case is In Re University of North Carolina, et al., 2018-2013. Mr. Durey, it's pretty much impossible to get from the spelling. Good morning, may I please the court. My primary goal here today is to answer any questions the court may have regarding our positions and I will try not to merely rehash what was already presented in the briefs. On page 57 of the blue brief, you say that PTAB's claim to construction of intercepting a first permission request as an encompassing stopping of a permission request until certain actions are performed is unreasonable and should be set aside. If we disagree with your claim to construction, do you lose? I don't think so. Only because of the second or at least I'm going to say at first I don't think so because the second additional argument that the board also failed to consider the additional limitations of claim 22. So perhaps we would lose with respect to two of the independent claims but not necessarily with respect to claim 22. So with respect to that, the two primary concerns that the appellants have with the board decision, I'll go ahead and jump into that first one which is intercepting a permission request. And I want to emphasize two major points with this. The first is that our position is that the board failed to interpret this in light of the specification. And the second is that even under the board's stated plain and ordinary meaning of intercept, the references simply do not teach intercepting a permission request. Where in the record do we find that Kirkup does not disclose intercepting a permission request? I'm going to tell you straight up. My view of your problem in this blueprint is what you just said. I don't think. And what I mean by that is I view most of this as if it's a Dixit. It's pure counsel argument. And you can say, well, the burden's on them so we don't have to do anything. And my personal analysis as counsel is this. But you haven't cited us to anything. I mean, it's difficult. But what I've tried to do, and I apologize for that difficulty, is I have tried to go through Kirkup and in particular the portions of Kirkup that the examiner is alleging and then the board affirmed based on those findings is alleging represents intercepting a permission request. And like I said, the first major point is I think that the entire construction that the board was relying on, that the examiner was relying on, that the solicitor seems to rely on. You have a person of skill telling us that. You have us, you, telling us that. Well, and what I would respond to that is, I guess, even under their plain and ordinary meaning, I don't necessarily think we have intercepting a permission request here. But with respect to the first one, I don't think that the board really appreciated and looked at the specification. And the reason is, if you look at the OAuth reference and you go and look through the OAuth reference, our specification explicitly discusses the OAuth reference. So I fully appreciate your point and I apologize for not having expert declaration or testimony or something like that. The specification actually discusses the OAuth reference. The specification talks about how we're intercepting the standard OAuth 2.0 authorization flow. Well, how do you deal with page 25 of the red brief, where the director says, quote, UNC's assertion that sections 1.4.2 and 1.4.3 of OAuth do not pertain to a web client was not raised below and thus waived on appeal? So I would respond in two ways. The first way that I would respond is that... I hope you'll respond by telling me where it was raised below. Well, I would respond by saying that we can't raise an APA challenge to a lack of substantial evidence below. That the issue here is the examiner made a factual finding that this was disclosed and we can't challenge that under the APA for a lack of substantial evidence at the board. The board said that the references need not use the exact word intercepting. And if you look at Kirkup, Kirkup says the application permissions module may be configured such that at a later time a request for applications permissions may be repeated. And just above that, this is column 5. They may be configured to review the list and modify or disable certain options. Isn't that sufficient for intercepting? There you're talking about... I guess what I would step back and ask is in Kirkup, what is it that the office is alleging is the permission request? So in Kirkup, you have this permissions module manager, right? And so Kirkup discloses, for example, that it uses an application permissions module which may identify and then parenthetical. And I'm reading from APPX 509, which is Kirkup paragraph 23. And don't we owe deference to the board in its interpretation of what the reference teaches? I would say that from a claim construction perspective for the first issue, it's de novo. In terms of deference to what the board teaches, yes, but I think that here there's not substantial evidence support for the board's finding. And also I'm not sure the board on some of these even made an explicit factual finding. But moving back to that portion of Kirkup, so it says, discloses use of an application permissions module which may identify, and then it says parenthetical, e.g. receive from each software application, close parenthetical, a set of application permissions required for that software application. So I think the first thing I would query is what exactly is the permissions request? So is it the communication that's received from each software application? Or is it, as the board or the examiner sometimes seem to suggest, some sort of pop-up interface that actually then shows you and gives you the ability for a user to accept? In the first case, I would say if it's actually the communication of receiving from that software application at the application permissions module, I would say that's just the intended flow, right? I mean, the permissions request is communicated from the software application and then received at the application permission module. I don't know how that's really being interrupted in progress. It's just being communicated in accordance with what the application expects to do. If you're modifying, aren't you necessarily interrupting? Well, I would say that they've received it, and I don't know that they're really interrupting. They talk about it can be done again later after the user's made their first decision, presumably. I think in contrast, what the present application, the present claims are focusing on is you have a communication permissions request that is sent out that is not intended to be intercepted by the web browser extension at all. And then it is, and it's intercepted. That's not the intended recipient. Whereas here, that's the intended recipient. And the interface in both cases, both in the OAuth reference as well as in the CURCOP reference, is only displayed after that permissions request communication is fully communicated. It's never that screen which the board and the office and the examiner seem to suggest constitutes. Again, it's not clear whether they think that is the permissions request or whether it's the actual electronic communication ahead of time. The electronic communication has already been completed before that interface is even displayed. Mr. Dore, you argue that the board's claim construction with regard to intercepting was too broad, should be set aside, correct? Yes. Is there anything that prevents you from amending your claims? Well, here, we actually tried to work with the examiner several times to amend the claims. At one point, we even sat down with the examiner, the inventor did as well, and tried to work with him. And we proposed multiple different claim amendments. We actually did amend the claims and came up with this. And repeatedly, every time we amended the claims, he came up with a new unreasonable claim construction. And eventually, we just decided to appeal it. Maybe that was the wrong call. But ultimately, we don't think that his factual findings and reading of the references is correct here. Well, I mean, you seem to be complaining that intercepting was so broad that it would read on intercepting a request from anywhere. And you seem to be arguing that the claim should be limited to require that requests be generated in a remote location or something to that effect. Why not just put that in the claim? We certainly can. And at the lower, at the board, we certainly focused a lot on the argument. We didn't feel like that was necessarily getting a lot of traction. We continue to think that it's just the intercepting. And looking at the way the board issues the decision, we feel like that the part that was incorrect was construing it to be intercepting a permission request at all. And that that's most clearly emphasized by the construction of intercepting to read on the OAuth authorization prior art flow that was specifically disclosed in the specification as being intercepted. Even the examiner in the examiner's office action laid out in several paragraphs, I'm referring to appendix 360 and 361, that would help if you could amend your claims and clarify exactly what you're trying to find, trying to recite. It seems to me that the problem here is that you've left yourself vulnerable to the arguments that you're saddled with. But you're, as an applicant, you have the right to amend. Entirely correct, Your Honor. I think that one of the frustrating parts, and I'll sit down after this, is that the examiner frequently in the office actions would just allege in a blanket manner, recite all the claim recitation back at us and then allege with some sort of blanket cite to a portion of a reference that it was disclosed when in fact it wasn't there. But if you amend the claim, then you can argue specifically to the examiner, no, here it is, it's in the claim. And when we amend it, he would then use that new amended language and just point to either the same portion or a different portion, even though it just wasn't there. Like here. Maybe, but you'd be in a better position to argue before the board and us than you are now. Okay, I'll reserve the remainder of my time. I was going to intercept you, but I don't need to. Thank you. We'll save the remainder of your time. Ms. Quello. Thank you, Your Honors, and may it please the Court. UNC is seeking broad method claims to a method of customizing permissions granted to third party applications. It has focused much of its briefing and its arguments on the disclosure or the deficiencies of the OAuth reference. But it's disregarding that the examiner and the board relied on the combination of OAuth with Kirkup. And that Kirkup teaches much of the disputed limitations, including the intercepting limitation. And in fact, UNC admitted in its opening brief at page 24 that Kirkup is a great example of a method for customizing the permissions to a third party application. Another housekeeping question. If we disagree with UNC's claim constructions, does the rest of the case go away? I don't believe so, Your Honor. As we laid out in our brief at page 34, Kirkup discloses intercepting under either construction. So I think either way... But if we... Oh, sorry, I think I twisted your question. If you disagree with their construction, yes, I believe so. Because substantial evidence supports the rest of the board and the examiner's conclusions with respect to Claim 22. In particular, for those additional limitations that it focused on, the examiner laid out where each of the limitations was disclosed by the combination of Kirkup and the OAuth reference. In response, UNC chose just to say that it was not disclosed. That's pretty much the summary of their argument that, no, the prior art does not disclose what the examiner thinks it's disclosing. Full stop. The board considered that argument and found it unpersuasive of error. So I think on a balance, when you have the examiner's citation to the statutory basis, the exact citations in the prior art, and a summary of its analysis in light of just saying, no, it's not there, I think that's a pretty good case of substantial evidence supporting the examiner and the board's interpretation. Just speaking briefly to the board's construction of intercepting, as I mentioned, it's disclosed by Kirkup under either construction. I think it's pretty clear that Kirkup explains that you have this phone and you want to install an app, and before this module was invented by Kirkup, your application would install on your phone and maybe it would not have the full set of permissions that it needed to run, or maybe it would have more permissions than the user would want to give the application. So Kirkup has this module that intercepts the permission requests as they come in and allows the user to modify them. So it's completely consistent with the claim limitations here. The board's construction is also completely reasonable as it is consistent with the claims. The claims do not recite intercepting an OAuth flow or intercepting a conventional authorization flow. It's intercepting a first permission request. So the board's construction was completely consistent with the claim language. It was also consistent with the spec that while UNC focuses on the one preferred embodiment on Appendix 57 that talks about intercepting a conventional flow, the rest of the specification is much broader than that. I would point you to paragraphs 19 on Appendix 43 and also paragraph 35 on Appendix 45, which just broadly discuss intercepting a first permission request, just like Kirkup does. And in fact, paragraph 19 in Appendix 43 talks about the receiving of a first permission request, which is the exact same language that Kirkup uses in its paragraph 23, which your honors discussed earlier. So finally, I think with respect to Claim 22, the last point I'd like to raise is that there were a number of arguments raised on appeal, some only raised newly in the reply brief regarding the disclosures of the OAuth reference and the deficiencies on Claim 22. We would argue that those are raised. Your honor raised the first point about Section 1.4.2, and I don't believe my co-counsel actually identified where that was raised. I don't believe that there's any precedent supporting the fact that the APA provides some loopholes that you can only raise arguments for the first time on appeal to this court. In addition, they raised the argument that the web browser extension is not an authorization server. That was not raised below. Indeed, they focused on the functionality throughout the case about the function of the web browser extension, and that's exactly what the examiner focused on, the parsing, the determining, all of those functions. And they raised one final argument in the reply brief, something about a scope token being a code, scope parameter being a token request versus a code. I'd just like to point out, again, that was just raised in the reply brief, not to the board, the examiner, or even in their opening brief. So unless your honors have any other questions, I'll yield the remainder of my time. Thank you, counsel. Mr. DeRay has a little rebuttal time. May I please the court? Thank you, your honors. I want to spend the last of my time talking about the additional limitations of Claim 22, which I think the solicitor briefly mentioned at the end there, talking about, you know, even accepting that I'm unsuccessful, that UNCC is unsuccessful on the intercepting argument on convincing this court that the claim construction of intercepting is erroneous. Claim 22 includes a number of additional language. For instance, it talks about determining by the web browser extension that the URI contains a sub, sorry, parsing by a web browser extension, a first URI loaded via the web browser, and determining that URI contains a substring, indicating that the first URI represents a permission request. None of this is disclosed in the OAuth reference. Notably, the solicitor in the brief doesn't even specifically allege or try to support the examiner's findings regarding this, that this is somehow disclosed in the reference. Instead, the solicitor proceeds on a waiver theory that this was somehow waived, and similarly proceeds on a waiver theory with respect to some of the other arguments made. Somehow or not raised below? Well, I would submit that what was raised below and the argument below was this claim limitation is not disclosed in the prior art, and that an additional explanation of exactly why is not, I would submit that's not raising a new argument. That's responding to points to solicitor aid. That's additionally explaining, emphasizing why it's simply not contained in the prior art. The examiner's entire allegation and made a specific factual finding, basically just quoting the claim recitation and then pointing to three different sections of the reference without actually explaining where in the reference it was. The fact is it just isn't there. I mean, it is a strange thing to ask, to flip the prima facie burden, to ask the applicant to go through the entire, every single section recited or quoted, and then explain why each one of those sections does not represent the recited claim language. Plain fact is none of it represents the recited claim language, and it's pretty clear. The claim language extends over two pages. It does, and it was not found. The specific step of parsing by a web browser extension, a first URI loaded via the web browser, and determining by the web browser extension that the URI contained, that step, that claim limitation is just not found in OAuth, in the OAuth 2.0 reference, which isn't surprising given that the entire specification talks about how it's an improvement on that OAuth 2.0 flow. So it's unsurprising that, in fact, that was not contained in the OAuth reference. The office is trying to flip the burden, and then when I explain exactly why that limitation is not there, they're then saying that it was waived. We raised the argument below that limitation was not there. We have attempted to explain why. Thank you. Thank you, counsel. The case will be submitted. All rise. The honorable court is adjourned until Monday morning. It's an o'clock a.m.